IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERDIGITAL COMMUNICATIONS, INC., a Delaware corporation, INTERDIGITAL TECHNOLOGY CORPORATION, a Delaware corporation, IPR LICENSING, INC., a Delaware corporation, and INTERDIGITAL HOLDINGS, INC., a Delaware corporation, | : : : : : : : : | C.A. No.: 1:13-cv-00010-RGA |
| Plaintiffs, | : : | |
| v. | : : | **JURY TRIAL DEMANDED** |
| NOKIA CORPORATION, a Finnish corporation, and NOKIA INC., a Delaware corporation, | : : : | |
| Defendants. | : | |

**PLAINTIFFS' COMBINED REPLY BRIEF IN SUPPORT OF ITS
MOTION TO JOIN MICROSOFT MOBILE OY AS A DEFENDANT PURSUANT TO
FED. R. CIV. P. 25(c) AND ANSWERING BRIEF IN OPPOSITION TO CROSS-
MOTION TO SUBSTITUTE OR ALTERNATIVELY TO DISMISS**

Neal C. Belgam #2721
SMITH KATZENSTEIN & JENKINS LLP
The Corporate Plaza
800 Delaware Avenue, Suite 1000
Wilmington, Delaware 19899
Telephone: (302) 504-1688
Facsimile: (302) 652-8405
nbelgam@skjlaw.com

*Counsel for Plaintiffs
InterDigital Communications, Inc.,
InterDigital Technology Corporation, IPR
Licensing, Inc., and InterDigital Holdings,
Inc.*

OF COUNSEL:

LATHAM & WATKINS LLP
Ron E. Shulman
E-mail: Ron.Shulman@lw.com
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

LATHAM & WATKINS LLP
Maximilian A. Grant
E-mail: Max.Grant@lw.com
Bert C. Reiser
E-mail: Bert.Reiser@lw.com
555 Eleventh Street, N.W., Ste. 1000
Washington, DC 20004
(202) 637-2200

Julie M. Holloway
LATHAM & WATKINS LLP
505 Montgomery Street, Ste. 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

WILSON SONSINI
GOODRICH & ROSATI
David S. Steuer
E-mail: dsteuer@wsgr.com
Michael B. Levin
E-mail: mlevin@wsgr.com
Maura L. Rees
E-mail: mrees@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

Dated: August 1, 2014

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I. PURSUANT TO RULE 25(C). MMO SHOULD BE JOINED AS A DEFENDANT WITH NOKIA CORP. AND NOKIA INC. RATHER THAN SUBSTITUTED ................................................................................................................ 2

    A. Nokia Corporation's Past Liability Alone Is Dispositive On The Issue Of Joinder ................................................................................................................ 2

        1. Conduct of the Litigation Would Be Facilitated By Joinder And Would Be Hindered by Substitution ........................................................... 3

        2. MMO's Agreement to Assume Liability of Nokia Corporation Does Not Justify Substitution ..................................................................... 5

    B. Nokia Corporation's Potential Ongoing Sales Do Not Support Cross-Movants' Request for Dismissal ................................................................................................. 8

II. CROSS-MOVANTS HAVE NOT SUPPORTED THE MOTION TO SUBSTITUTE MMO AS A COUNTERCLAIMANT WITH COMPETENT EVIDENCE ............................................................................................................................ 9

CONCLUSION ......................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199 (3d Cir. 2009) ............................. 10

*Bank of New England, N.A. v. Callahan*, 758 F. Supp. 61 (D.N.H. 1991) ..................................... 7

*Dollar Dry Dock Sav. Bank v. Hudson St. Dev. Assocs.,* No. 92 CIV. 3737 (SAS),
    1995 WL 412572 (S.D.N.Y. July 12, 1995) ............................................................................. 7

*Hawke Assocs. v. City Fed. Sav. Bank*, 787 F. Supp. 423 (D.N.J. 1991) ........................................ 7

*Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69 (3d Cir. 1993) .................................. 12

*Mars, Inc. v. JCM Am. Corp.*, No. 05-3165 (RBK), 2007 WL 776786 (D. N.J.
    Mar. 9, 2007) ............................................................................................................................ 13

*Moody v. Albemarle Paper Co.*, 50 F.R.D. 494 (E.D.N.C. 1970) .................................................... 2

*Munich Reinsurance Am., Inc. v. Am. Nat'l Ins. Co.*, 936 F. Supp. 2d 475 (D.N.J.
    2013) ........................................................................................................................................ 10

*R. R. Mgmt. Co. LLC v. CFS La. Midstream Co.*, 428 F.3d 214 (5th Cir. 2005) .......................... 10

*Wainwright v. Kraftco Corp.*, 58 F.R.D. 9 (N.D. Ga. 1973) ............................................................ 2

*Zest IP Holdings, LLC v. Implant Direct Mfg., LLC,* No. 10CV0541-GPC-WVG,
    2013 WL 1626111 (S.D. Cal. Apr. 15, 2013) ........................................................................... 2

**RULES**

Fed. R. Evid. 1002 ...................................................................................................................... 5, 10

Fed. R. Civ. P. 25(c) ............................................................................................................... passim

**MISCELLANEOUS**

Lou R. Kling and Eileen T. Nugent, Negotiated Acquisitions of Companies,
    Subsidiaries and Divisions § 15.01 n.10 (17th ed. 2001) ........................................................ 2

15 Fletcher Cyclopedia of Corporations § 7123 ............................................................................. 2

# TABLE OF ABBREVIATIONS

| Abbreviation | Full Name |
|---|---|
| InterDigital | Collectively, InterDigital Communications, Inc., InterDigital Technology Corporation, IPR Licensing, Inc., and InterDigital Holdings, Inc. |
| Nokia | Collectively, Nokia Corporation and Nokia Inc. |
| MMO | Microsoft Mobile Oy |
| Exs. A through K | Exhibits to Declarations of Maura L. Rees filed in support of Plaintiffs' motion |
| Exs. 1 through 8 | Exhibits to Answering Brief of Microsoft Mobile Oy in Response to Plaintiffs' Motion to Add It, and Opening Brief in Support of Cross-Motion to Substitute Parties Under Fed. R. Civ. P. 25 or Alternatively to Dismiss Nokia Corp. as a Named Party on Counterclaims |
| ITC | International Trade Commission |
| Mot. | Plaintiffs' Opening Brief in Support of Its Motion to Join Microsoft Mobile Oy as a Defendant Pursuant to Fed. R. Civ. P. 25(c) |
| Cross-Mot. | Answering Brief of Microsoft Mobile Oy in Response to Plaintiffs' Motion to Add It, and Opening Brief in Support of Cross-Motion to Substitute Parties Under Fed. R. Civ. P. 25 or Alternatively to Dismiss Nokia Corp. as a Named Party on Counterclaims |
| Rees Opp. Decl. | Declaration of Maura L. Rees In Support of Plaintiffs' Combined Reply Brief in Support of Motion to Join Microsoft Mobile Oy as a Defendant Pursuant To Fed. R. Civ. P. 25(c) and Answering Brief in Opposition to Cross-Motion to Substitute or Alternatively to Dismiss |

## INTRODUCTION

Nokia Corporation and Microsoft Mobile Oy ("MMO") do not oppose the relief that InterDigital requests in its motion, as they agree that MMO should become a defendant in this case. *See* D.I. #302 at 2 ("MMO agreed to be added as a named party"). Thus, the issue of MMO's joinder is undisputed, and InterDigital's motion should be granted.

The only dispute between the parties relates to MMO's cross-motion to substitute (joined by Nokia Corporation), in which they seek the dismissal of Nokia Corporation. The cross-motion should be denied because it fails to demonstrate any legal or factual basis on which it would be proper to dismiss Nokia Corporation as a defendant. InterDigital's lawsuit seeks, *inter alia*, damages from Nokia Corporation for past infringement of the patents-in-suit prior to the transaction with MMO. Nokia Corporation's transaction with MMO cannot erase the past liability for which InterDigital seeks redress in this lawsuit, and therefore Nokia Corporation should remain as a co-defendant because it remains jointly liable. The factual circumstances that normally justify substitution instead of joinder (*i.e.*, where the transferor is defunct, dissolved, insolvent, etc.) are not present here. Consequently, joinder, rather than substitution, is proper in this case.

Independently from the issue of whether Nokia Corporation should remain in the case as a ***defendant***, MMO also moves to be substituted as the counterclaim ***plaintiff*** on the counterclaims asserted by Nokia Corporation. However, MMO has failed to support this request with competent evidence, and its motion should therefore be denied unless and until it can demonstrate a basis for substitution. MMO's alternate request to dismiss Nokia Corporation as a counterclaim plaintiff "without prejudice" is also deficient, and should likewise be denied.

## ARGUMENT

**I. PURSUANT TO RULE 25(C). MMO SHOULD BE JOINED AS A DEFENDANT WITH NOKIA CORP. AND NOKIA INC. RATHER THAN SUBSTITUTED**

### A. Nokia Corporation's Past Liability Alone Is Dispositive On The Issue Of Joinder

InterDigital has alleged that Nokia Corporation's past sales of accused products render it liable for damages for patent infringement. InterDigital's motion cited ample authority – none of which was contested in cross-movants' papers – demonstrating that an agreement to transfer tort liability, such as the one between MMO and Nokia Corporation, only serves to render the transferee liable as well. Mot. at 3-4, citing *e.g.*, Lou R. Kling and Eileen T. Nugent, Negotiated Acquisitions of Companies, Subsidiaries and Divisions § 15.01 n.10 (17th ed. 2001) ("[T]ransferring a liability does not relieve the transferor of liability unless the party to whom the transferor is liable has agreed to a release. The transfer merely renders the transferee responsible as well."); 15 Fletcher Cyclopedia of Corporations § 7123 ("Although the sale of assets may allow an injured plaintiff to proceed against the successor corporation, it does not vitiate the original company's liability. The right of the injured party to elect to proceed against the defunct corporation, the successor corporation, or both cannot be altered per se by the corporations, although the corporations can regulate how such liability will be allocated among themselves.").

Because both the transferor and transferee of corporate assets remain jointly liable to a tort plaintiff notwithstanding an assumption of liability by the transferee, the correct result under Rule 25(c) is to join the transferee as an additional defendant with the transferor. Cross-movants' papers did not distinguish any of the cases cited by InterDigital so holding. *See Zest IP Holdings, LLC v. Implant Direct Mfg., LLC,* No. 10CV0541-GPC-WVG, 2013 WL 1626111, at *1 (S.D. Cal. Apr. 15, 2013); *Wainwright v. Kraftco Corp.*, 58 F.R.D. 9, 14 (N.D. Ga. 1973); *Moody v. Albemarle Paper Co.*, 50 F.R.D. 494 (E.D.N.C. 1970). Further, it would be unjust, and would not comport with due process, to deprive a plaintiff of remedies against a tortfeasor merely because the tortfeasor entered into a corporate transaction with another company.

InterDigital has not granted a release to Nokia Corporation, so there is no basis to dismiss it as a defendant.

Cross-movants have not disputed that past liability on the part of Nokia Corporation remains at issue in this case. Nevertheless, they argue that MMO should be substituted rather than joined because: (1) it would purportedly facilitate the conduct of the litigation; and (2) MMO can allegedly pay for damages that a jury may award in InterDigital's favor, so Nokia Corporation's presence is unnecessary. Neither argument is sound.

### 1. Conduct of the Litigation Would Be Facilitated By Joinder And Would Be Hindered by Substitution

Cross-movants correctly note that the Court should consider the approach that best facilitates conduct of the litigation when deciding a motion under Rule 25(c). Cross-Mot. at 9. Here, efficiency in the conduct of the litigation would be promoted by joinder, whereas substituting MMO and dismissing Nokia Corporation would cause undue expense, delay and burden. Nokia Corporation is a Finnish company and its relevant employees and documents are located in Finland. Pursuing non-party discovery of a foreign entity is cumbersome and slow, as InterDigital would have to issue subpoenas and serve them in a foreign country pursuant to the Hague Convention. While discovery is closed concerning the patent issues that will be tried in September, discovery remains open as to the bifurcated FRAND and damages issues. Nokia Corporation has identified witnesses specifically as having knowledge relevant to precisely those issues in its initial disclosures, including Mika Anttila and Paul Melin, who remain employed at Nokia Corporation and are not employees of MMO. Rees Opp. Decl., Ex. I (defendants' supplemental initial disclosures, served July 18, 2014, continue to identify Messrs. Anttila and Melin); Rees Decl., Ex. G (confirmation from cross-movants' counsel that these individuals are employed by Nokia Corporation, not MMO). Similarly, because Nokia Corporation has retained its wireless patent portfolios and has not transferred them to MMO, information about patent licensing (relevant to both FRAND and damages) remains in the possession of Nokia Corporation.

Cross-movants point to the Agreement Regarding Pending Litigation between MMO and Nokia Corporation, in which Nokia Corporation agreed to "reasonably respond, subject to appropriate objections, to discovery requests directed at Nokia [Corporation] and propounded in the Action both before and after Microsoft Mobile takes control of the Actions." Cross-Mot. at 10, citing Ex. C. They appear to be arguing that this ensures that discovery would not be disrupted by dismissing Nokia Corporation. However, the vague and qualified language of this provision falls far short of an agreement on the part of Nokia Corporation to fully participate in discovery as though it were a party, and to remain subject to party discovery standards and the jurisdiction of this Court. It also says nothing about making witnesses available for deposition. Cross-movants have also informed InterDigital that they do not consider InterDigital to be an intended third party beneficiary of the Agreement Regarding Pending Litigation, so InterDigital has no way to enforce the purported "discovery cooperation" agreement. Rees Opp. Decl., ¶ 5. Indeed, if Nokia breaches this provision, MMO may argue that it has grounds to rescind or suspend its own performance under the agreement and repudiate any assumption of liability for this case. The Agreement Regarding Pending Litigation provides no enforceable assurance that discovery could be obtained from Nokia Corporation if it were dismissed from this action. The conduct of the litigation will undoubtedly be facilitated by keeping Nokia Corporation as a party, whereas dismissing Nokia Corporation would introduce numerous complications.

Cross-movants' attempt to suggest that all relevant information is now in the possession of MMO is not credible. Cross-movants' claim that "MMO now employs the D&S Business personnel and management, and it possesses, or has access to, all relevant documents and records" (Cross-Mot. at 10) is contradicted by the evidence. Cross-movants have represented to InterDigital in writing that certain relevant witnesses remain employed by Nokia Corporation and are ***not*** employed by MMO. Ex. G. Further, cross-movants cite the declaration of Mr. Orndorff and an SEC filing that say nothing to suggest that "all relevant documents and records" are in the possession of MMO. Cross. Mot. at 10. Mr. Orndorff's declaration is silent on the issue of documents, and nowhere mentions the location of "all relevant documents and records."

The SEC filing is not admissible evidence for the purpose for which it is offered,[1] but even if it were, it describes only an agreement between MMO and Nokia to allow access to certain unspecified records relating to the D&S Business, and there is no way of knowing whether it encompasses all the discovery requested in this action. Cross-movants have also not suggested that such an agreement would be enforceable by InterDigital in any event.

Cross-movants' assertion that Nokia Corporation's continued presence in the litigation as a defendant would "impose unnecessary burden, complexity, and expense on the parties and the Court" (Cross-Mot. at 9) is not supported by any showing or even explanation as to how this would be the case. In fact, the opposite is true: it would introduce significant complexity and burden to dismiss Nokia Corporation as a defendant when its past liability remains at issue in the litigation. If MMO has to first seek and obtain documents and information from Nokia Corporation and then provide them in discovery, this adds an extra, unnecessary step that is certain to result in added expense and delay. It is far more efficient for discovery to be available from Nokia Corporation directly. MMO also has not claimed any ability to produce Nokia Corporation deponents. From the perspective of facilitating the conduct of litigation, joinder is clearly superior to substitution.

### 2. MMO's Agreement to Assume Liability of Nokia Corporation Does Not Justify Substitution

Cross-movants argue that there is no reason for Nokia Corporation to remain as a defendant because MMO has agreed to assume liability for this action, and therefore InterDigital should be satisfied with MMO as a substitute defendant. Cross-Mot. at 10. This argument does not stand up to scrutiny.

Cross-movants claim that MMO is a "well-capitalized entity" that will be "fully able to discharge" any alleged damages or losses. *Id*. Cross-movants, however, fail to provide any evidentiary support for this assertion. The cross-motion cites to a conclusory statement in the

---

[1] Under the best evidence rule, secondary evidence cannot be used to prove the terms of an agreement. Fed. R. Evid. 1002; *see also infra* Section II.

-5-

Orndorff declaration that provides no meaningful information about MMO's financial condition or its ability to satisfy a judgment. *See id.*, citing Orndorff Decl., Ex. 2, at ¶ 5 ("MMO is a fully capitalized operating entity. A Microsoft affiliate will provide MMO with working capital and financing for day to day operations."). This extremely vague statement provides no details about the extent of the alleged capitalization, nor any information about MMO's balance sheet, assets, or cash position. While the Orndorff Declaration references a "capital contribution" of $8.5 billion to MMO from Microsoft (*id.* at ¶ 3), this is expressly described as the funds with which "MMO financed the acquisition" – *i.e.*, the compensation MMO paid to Nokia Corporation for the purchased assets. Cross-movants provided no evidence of MMO's current financial position.

Even assuming that MMO is or could become well-capitalized, however, this would not be a sufficient basis to dismiss Nokia Corporation as a defendant. Corporate transactions are commonplace, and Microsoft may decide to sell MMO to yet another acquirer. Indeed, two weeks ago, Microsoft announced that it is laying off approximately 18,000 employees, mostly from the acquired Nokia D&S Business, in order to realign the workforce and focus on its "strategic direction as a productivity and platform company."[2] This certainly raises questions about the future of MMO as a Microsoft entity. As another example, after acquiring Motorola Mobility in 2012, Google announced in January 2014 that it is selling Motorola Mobility to Lenovo, a Chinese company.[3] Product businesses in the mobile device market have not infrequently changed hands via corporate reshufflings. Thus, even if one assumed MMO to be well-capitalized, a subsequent owner of the Nokia D&S business might not be. It would be unjust to InterDigital to dismiss Nokia Corporation, which undisputedly sold accused products in

---

[2] *See* http://www.microsoft.com/en-us/news/press/2014/jul14/07-17pressrelease.aspx ; http://www.microsoft.com/en-us/news/press/2014/jul14/07-17announcement1.aspx

[3] *See* https://investor.google.com/releases/2014/0129.html

this case and has potential liability, merely because MMO currently asserts (without evidence) that it can and would satisfy a judgment.[4]

Cross-movants' argument also ignores that Nokia Corporation or MMO could breach one or more of their agreements, resulting in a situation where MMO denies or repudiates any contractual obligation of responsibility for liability to InterDigital.  In that case, if Nokia Corporation has already been dismissed, InterDigital would have been irremediably prejudiced in pursuing remedies against it.  There are many reasons why MMO might not ultimately satisfy a judgment at some date in the future, after trial court proceedings and appeals have been concluded.  Because of such uncertainties, plaintiffs generally prefer to join all defendants with potential joint liability in the same action.  It would work an injustice upon InterDigital to dismiss Nokia Corporation as a defendant absent a compelling reason, and cross-movants here have offered none.

Having demonstrated no factual justification for substitution of MMO and dismissal of Nokia Corporation, cross-movants have also failed to cite any legal authority in support of their motion.  The cases cited by cross-movants for the propriety of substitution arose in the context of failed banks that were taken over by receivers.  *See Dollar Dry Dock Sav. Bank v. Hudson St. Dev. Assocs.,* No. 92 CIV. 3737 (SAS), 1995 WL 412572, at *4 (S.D.N.Y. July 12, 1995); *Hawke Assocs. v. City Fed. Sav. Bank*, 787 F. Supp. 423, 425 (D.N.J. 1991); *Bank of New England, N.A. v. Callahan*, 758 F. Supp. 61, 62-63 (D.N.H. 1991).  Certainly, where an original party has been declared insolvent and is in receivership, one might conclude that substitution of the transferee is appropriate, as there often may be little point in including a judgment-proof party in a lawsuit.  But cross-movants do not and cannot claim that such a situation is present here, and therefore their cited cases are inapposite.  It is undisputed that Nokia Corporation is

---

[4] Cross-movants' argument also assumes, without demonstrating, that the Purchase Agreement or other agreements between Nokia and Microsoft impose no monetary or other limits on MMO's indemnification obligations.  The Agreement Regarding Pending Litigation has no integration clause, and does not purport to supersede any of the other agreements that exist between Microsoft and Nokia regarding these issues.

continuing in business; no one asserts that it is insolvent, in dissolution, or defunct. To the contrary, Nokia Corporation announced that "[f]ollowing this transaction, Nokia's financial situation is expected to be significantly stronger and its earnings profile significantly improved." Ex. B at 7. Where, as here, both the transferor and transferee are solvent operating companies, joinder is the better choice under Rule 25(c).

### B. Nokia Corporation's Potential Ongoing Sales Do Not Support Cross-Movants' Request for Dismissal

Cross-movants incorrectly argue that Nokia Corporation should be dismissed because "only . . . MMO's products" are at issue, and therefore any future sales of Nokia Corporation would relate to an "advisory opinion" over which the Court does not have jurisdiction. Cross-Mot. at 11-12. Cross-movants misapprehend the significance of Nokia Corporation's potential ongoing sales. InterDigital does not base its joinder arguments in this action on potential undeveloped, future products. With respect to the currently accused products, cross-movants admit in a footnote to their motion that Nokia Corporation continues to own two manufacturing facilities that make such devices. Cross-Mot. at 1 n.1. They argue, but do not support with any evidence, that while Nokia Corporation sells devices from such a facility to Microsoft, they recently ceased importing those products into the United States. *Id*. These circumstances alone significantly undermine any argument that it would be proper to dismiss Nokia Corporation, given the questions raised about ongoing sales of currently accused products.

More importantly, however, putting aside whether Nokia Corporation continues to sell accused products now or in the future, it is undisputed that Nokia Corporation sold accused products in the past. Because this action seeks damages for past liability, Nokia Corporation is a proper defendant. The extent to which a party has ceased the allegedly infringing activity is a factual question that may be relevant to damages and other remedial issues, but it certainly does not justify dismissal, as cross-movants argue here. While the ITC relied on Nokia Corporation's potential continued sales as a basis for its order joining MMO as an additional respondent and declining to dismiss Nokia Corporation from the pending ITC investigations, the ability to make

future sales is especially important in that context because ITC remedies (*e.g.*, exclusion orders) are prospective. A District Court, however, can also award remedies for past infringement, so Nokia Corporation's past sales demonstrate even more strongly that it should remain as a defendant in this forum.

## II. CROSS-MOVANTS HAVE NOT SUPPORTED THE MOTION TO SUBSTITUTE MMO AS A COUNTERCLAIMANT WITH COMPETENT EVIDENCE

The cross-motion to substitute MMO as a counterclaimant with respect to Nokia Corporation's counterclaims should be denied, at least at this juncture when MMO and Nokia Corporation have submitted no competent evidence supporting it.

On July 9, 2014, InterDigital's counsel suggested that the parties discuss a potential stipulation to allow substitution of MMO as a counterclaimant. Nokia and MMO provided a draft stipulation. Ex. J. On July 15, 2014, InterDigital suggested clarifying language for the proposed stipulation. Ex. K (including, *e.g.*, a proposal that Nokia Corporation would agree to participate in discovery as though it were a party, and that Nokia/MMO would not argue that such a stipulation supports dismissing Nokia Corporation as a defendant). Nokia and MMO did not respond to InterDigital's proposal, and instead filed the instant cross-motion on July 22, 2014.

Cross-movants have not supported their motion to substitute MMO as a counterclaimant with admissible evidence. In order for MMO to demonstrate the existence of a "transfer of interest" in the counterclaims that would support substitution under Rule 25(c), it must prove that Nokia Corporation has assigned the counterclaims and underlying interests to MMO. However, cross-movants submitted no assignment agreement with their motion. Instead, cross-movants rely only on attorney argument and an SEC filing that is inadmissible under the best evidence rule (and that, even if it were admissible, has no specific discussion of the counterclaims at issue in this lawsuit in any event).

Cross-movants argue that the Purchase Agreement between Nokia and Microsoft that effected the asset sale included an assignment of the counterclaims asserted in this case.

Although they cite the Purchase Agreement repeatedly in the cross-motion (*see e.g.,* Cross-Mot. at 5 describing the "terms of the Purchase Agreement"), one will search their moving papers in vain for this agreement. Although they rely directly on the Purchase Agreement as the source of the assignment on which they base their cross-motion to substitute MMO as a counterclaimant, cross-movants submitted only a high-level summary of the Purchase Agreement included in an SEC Form 6-K. Ex. 1. Under the best evidence rule, however, cross-movants must submit the assignment agreement to the Court if they seek to rely on it.[5] Federal Rule of Evidence 1002 provides that "[a]n original writing . . . is required in order to prove its content." Fed. R. Evid. 1002. Secondary evidence, such as the highly abridged description in the Form 6-K, is not admissible to prove the contents of a contract. *See Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 222 (3d Cir. 2009) (affirming exclusion of secondary evidence about contents of contracts where party did not produce the contracts at trial); *R. R. Mgmt. Co. LLC v. CFS La. Midstream Co.*, 428 F.3d 214, 218-19 (5th Cir. 2005) (excluding secondary evidence of terms of assignment agreement); *Munich Reinsurance Am., Inc. v. Am. Nat'l Ins. Co.*, 936 F. Supp. 2d 475, 490 (D.N.J. 2013) (under best evidence rule, party who "cannot produce a final, written agreement" precluded from relying on terms of agreement).

Moreover, even if it were admissible, the Form 6-K provides only vague descriptions of the Purchase Agreement and omits numerous relevant provisions, rendering it insufficient evidence of an assignment of the counterclaims at issue. For example, cross-movants cite a tiny snippet of the Form 6-K for the proposition that pursuant to the Purchase Agreement, "Nokia Corporation sold to Microsoft the 'defenses, rights of offset or counterclaims related to the

---

[5] Cross-movants appear to argue that because InterDigital's earlier motion to compel documents concerning the Purchase Agreement was denied without prejudice to seeking a narrower set of documents (Cross-Mot. at 11), they need not include the Purchase Agreement with their motion. However, cross-movants have now directly put the Purchase Agreement at issue by relying on it as a "transfer of interest" that justifies the relief they seek on their cross-motion in the form of Rule 25(c) substitution of MMO as counterclaimant. Cross-movants cannot simultaneously rely on the terms of a contract while refusing to submit the contract to the Court; this type of "sword/shield" use of evidence is not permitted.

Assumed Liabilities' (Nokia Form 6-K, Ex. 1, at 37).'" Cross-Mot. at 5-6. At pages 36-40, the Form 6-K sets forth a high-level bullet-list summary of provisions of the Purchase Agreement, and does not purport to be quoting directly from it. Ex. 1. Moreover, there is no way of knowing whether the referenced "counterclaims related to the Assumed Liabilities" include, in an unqualified manner, all of the counterclaims raised in this action. "Assumed Liabilities" is defined as "all liabilities solely to the extent primarily relating to the ownership, use or operation of the Purchased Assets or primarily relating to, or primarily used in the D&S Business, whether arising prior to or after the Closing, *but excluding the Retained Liabilities*." Ex. 1 at 39 (emphasis added). The Form 6-K then explains that "Retained Liabilities" include such items as "all liabilities for which Nokia or any Asset Selling Entity expressly has responsibility pursuant to the Purchase Agreement" and "all liabilities related to Excluded Assets" – without any specification of which liabilities fall into these categories. *Id*. at 39-40. Indeed, the Form 6-K raises more questions than it answers about which claims have been assigned from Nokia Corporation to MMO and which have been retained by Nokia Corporation. By confirming that the Purchase Agreement *excludes* certain unidentified assets and liabilities from the transfer to MMO, the Form 6-K does nothing to prove the terms of an assignment agreement or to demonstrate that the counterclaims in this case are subject to it.

These issues take on heightened importance when considered in light of cross-movants' request to dismiss Nokia Corporation "without prejudice" as a counterclaimant. Cross-Mot. at 13. By seeking dismissal "without prejudice," cross-movants appear to be seeking to preserve Nokia Corporation's ability to reassert claims against InterDigital at some point in the future. Cross-movants provide no basis on which this would be appropriate, and indeed it raises the concern that Nokia Corporation and MMO have allocated the counterclaims between themselves in some manner that purports to allow Nokia Corporation the ability to retain and assert duplicative or seriatim claims against InterDigital. In the absence of any evidence about the actual terms of the agreements between Nokia Corporation and MMO, InterDigital (and the Court) cannot adequately assess the import of the relief cross-movants are requesting. By

relying on a high-level bullet point summary in an SEC filing; a vaguely-worded declaration from an MMO employee; and carefully worded attorney argument—while withholding the terms of the underlying agreements—cross-movants apparently seek to obtain unwarranted relief in a manner that deprives InterDigital of due process and a fair opportunity to offer rebuttal.

In similar circumstances, the Third Circuit has held that it would be clear error to grant a Rule 25(c) motion without further fact-finding. *Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3d Cir. 1993). In *Luxliner*, the non-movant requested that the trial court "'permit [it] to test the veracity'" of the movant's evidence "'through further discovery and an evidentiary hearing.'" *Id*. The trial court declined this request and decided the motion notwithstanding the factual dispute presented on the motion. The Third Circuit reversed, holding that the trial court must conduct an evidentiary hearing to determine the facts necessary to support Rule 25(c) substitution. *Id*. at 75-76. Otherwise, the due process rights of the non-movant would be impermissibly infringed. *Id*. at 72-73.

Here, in the absence of adequate and competent evidence on which to base a decision on the cross-motion to substitute MMO as a counterclaimant, the Court should defer consideration of this issue, and deny cross-movants' request regarding the counterclaims until further factual development can occur. This approach has been taken by other courts faced with a request to substitute a plaintiff following an assignment, where the record was insufficiently developed to determine the scope and nature of the assignment:

> The present record provided by the parties does not clearly indicate, nor is this Court prepared to rule, whether Mars, MEI, or a third party presently owns the rights and interests in the patents-in-suit. Consequently, it is not appropriate for the Court to rule at this time that MEI should be substituted for Mars. In the context of a Rule 25(c) substitution motion, the Third Circuit addressed an analogous situation in *Luxliner* where the parties submitted competing affidavits concerning the alleged successor liability of two companies. The decision in *Luxliner* indicates that a court cannot decide disputed successor liability fact issues by simply evaluating the parties' affidavits. *Luxliner,* 13 F.3d at 72 (citations omitted). The Court held that an evidentiary hearing is necessary to resolve this issue. *Id*. Due to the uncertainty over the rights and interests in the patents-in-suit in this case, this Court exercises its discretion to decline to substitute MEI for Mars.

*Mars, Inc. v. JCM Am. Corp.*, No. 05-3165 (RBK), 2007 WL 776786, at *2 (D. N.J. Mar. 9, 2007) (ordering joinder rather than substitution).

## CONCLUSION

For the foregoing reasons, InterDigital respectfully requests that the Court grant its motion to join MMO as a defendant pursuant to Fed. R. Civ. P. 25(c), and deny cross-movants' motion to substitute.

                            SMITH KATZENSTEIN & JENKINS LLP

                            */s/ Neal C. Belgam*
                            Neal C. Belgam (No. 2721)
                            The Corporate Plaza
                            800 Delaware Avenue, Suite 1000
                            Wilmington, Delaware 19899
                            Telephone:  (302) 504-1688
                            Facsimile:   (302) 652-8405
                            nbelgam@skjlaw.com

                            *Counsel for Plaintiffs*
                            *InterDigital Communications, Inc., InterDigital*
                            *Technology Corporation, IPR Licensing, Inc.,*
                            *and InterDigital Holdings, Inc.*

OF COUNSEL:

LATHAM & WATKINS LLP
Ron E. Shulman
E-mail: Ron.Shulman@lw.com
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

LATHAM & WATKINS LLP
Maximilian A. Grant
E-mail: Max.Grant@lw.com
Bert C. Reiser
E-mail: Bert.Reiser@lw.com
555 Eleventh Street, N.W., Ste. 1000
Washington, DC  20004
(202) 637-2200

-14-

WILSON SONSINI
GOODRICH & ROSATI
David S. Steuer
E-mail: dsteuer@wsgr.com
Michael B. Levin
E-mail: mlevin@wsgr.com
Maura L. Rees
E-mail: mrees@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

Dated: August 1, 2014