IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERDIGITAL COMMUNICATIONS, INC., a Delaware corporation, INTERDIGITAL TECHNOLOGY CORPORATION, a Delaware corporation, IPR LICENSING, INC., a Delaware corporation, and INTERDIGITAL HOLDINGS, INC., a Delaware corporation,<br><br>Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>NOKIA CORPORATION, NOKIA, INC., AND MICROSOFT MOBILE OY,<br><br>Defendants and Counterclaim Plaintiffs. | Civil Action No.: 1:13-cv-00010-RGA |

## MEMORANDUM OPINION

Neal C. Belgam, Esq., Smith, Katzenstein & Jenkins, Wilmington, DE; Jonathan D. Link, Esq., Latham & Watkins LLP, Washington D.C.; Ron E. Schulman, Esq., Latham & Watkins LLP, Menlo Park, CA; Julie M. Holloway, Esq. (argued), Latham & Watkins LLP, San Francisco, CA, attorneys for Plaintiffs InterDigital Communications, Inc., InterDigital Technology Corporation, IPR Licensing, Inc., and InterDigital Holdings, Inc.

Rodger D. Smith II, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Richard A. Cederoth, Esq., Sidley Austin LLP, Chicago, IL; Scott Border, Esq., Joseph A. Micallef, Esq. (argued), Sidley Austin LLP, Washington, DC; Dan K. Webb, Esq., Raymond C. Perkins, Esq., Kevin E. Warner, Esq., Winston & Strawn LLP, Chicago, IL; David A. Frist, Esq., Alston & Bird, Atlanta, GA, attorneys for Defendants Nokia Corporation, Nokia, Inc. and Microsoft Microsoft Mobile Oy.

April 24, 2015

**ANDREWS, U.S. DISTRICT JUDGE:**

Pending before this Court is the issue of claim construction of a disputed term found in U.S. Patent No. 8,380,244 ("the '244 patent"). The Court has considered the relevant papers. (D.I. 466, 467, 473, 474). The Court heard oral argument on April 23, 2015. (Tr.).[1]

## I. BACKGROUND

On January 2, 2013, InterDigital Communications, Inc., InterDigital Technology Corporation, IPR Licensing, Inc., and InterDigital Holdings, Inc. filed this patent infringement action. (D.I. 1). Trial is scheduled to begin on April 27, 2015. At the pre-trial conference, the Court invited the parties to submit letters regarding whether additional claim construction would be necessary prior to trial. The parties requested additional claim construction of one disputed phrase.

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually,

---

[1] Citations to "Tr." refer to the transcript of the *Markman* hearing.

it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks and citations omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (internal quotation marks and citations omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (internal citations omitted).

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks and citations omitted). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per*

3

*Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

## III. CONSTRUCTION OF DISPUTED TERM

Claim 1 of the '244 patent reads:

A subscriber unit comprising:

> a cellular transceiver *configured to communicate with a cellular wireless network via a plurality of assigned physical channels*;
>
> an IEEE 802.11 transceiver configured to communicate with an IEEE 802.11 wireless local area network; and
>
> a processor configured to maintain a communication session with the cellular wireless network in an absence of the plurality of assigned physical channels while the IEEE 802.11 transceiver communicates packet data with the IEEE 802.11 wireless local area network.

(emphasis added).

Plaintiffs argue that the phrase requiring construction is "configured to communicate . . . via a plurality of assigned physical channels," and that it should be construed to mean "configured to transfer data . . . over a plurality of assigned physical channels." (D.I. 467 at 1). Plaintiffs maintain that the specification and surrounding claim language confirm that the relevant channels include physical data channels and digital voice channels used to carry data, but not control channels. (*Id.* at 2). The specification describes the subscriber unit allocating bandwidth (*i.e.*, physical data channels) when data is present and deallocating bandwidth when no data is present. (D.I. 473 at 4). Plaintiffs argue that because bandwidth is allocated based on the presence of data, the channels in question are physical data channels and voice channels used to carry data. (*Id.*, Tr. 23-26). Plaintiffs also argue that, under Defendants' construction, the subscriber unit would be unable to receive calls if it were using the W-LAN connection (*i.e.*, Wi-Fi) to transfer data. (D.I. 467 at 4).

4

In addition, Plaintiffs argue that the surrounding claims demonstrate that the plurality of assigned physical channels does not include control channels. Dependent claims 5 and 21 add the requirement that "the processor is further configured to release the plurality of assigned physical channels." (D.I. 473 at 5). Because a subscriber unit is incapable of releasing control channels, Plaintiffs argue that including them in the plurality of assigned physical channels is nonsensical. (D.I. 473 at 4).

Defendants argue that the phrase requiring construction is "a plurality of assigned physical channels," and that it should be construed to mean "the set of assigned physical channels with which the cellular transceiver is configured to communicate with the cellular wireless network." (D.I. 466 at 1). Defendants maintain that this construction captures the requirement that the plurality of assigned physical channels include all the channels necessary for the device to communicate with the cellular wireless network. (*Id.* at 2). They argue that, by limiting the plurality to data and voice channels, Plaintiffs are attempting to import the term "comprising" from the preamble into the claim elements. (*Id.*). Defendants also note that the plurality of assigned physical channels includes both uplink and downlink channels. (*Id.* at 4). They argue that the channels therefore include downlink control channels. (*Id.*).

Defendants also argue that claim differentiation supports their construction. (*Id.*). Dependent claim 7 adds the requirement that "at least one of the plurality of assigned physical channels is a data channel." (*Id.*). If the plurality of assigned physical channels is limited to data channels, Defendants argue that claim 7 would be superfluous. (*Id.*). In addition, Defendants note that the third element of claim 1 states that the "IEEE 802.11 transceiver communicates *packet data* with the IEEE 802.11 wireless local area network." (Tr. at 31 (emphasis in demonstratives)). They argue that the applicants therefore knew how to specify that the

5

transceiver was communicating data, as opposed to communicating generally; if they intended for the "communicate" phrase in the first element to be limited to communicating data, they would have so specified. (*Id.*).

The Court finds that the plurality of assigned physical channels need not include every channel the cellular transceiver uses to communicate. The specification describes the bandwidth management function as allocating and deallocating channels in response to the presence of data. ('244 patent, col. 10, ll. 34-43). It makes sense, therefore, that the channels in question are those used to transfer data. Figure 6, to which applicants limited the invention, describes only the transfer of data. There is no mention or discussion of control channels.

In addition, Defendants' construction would render a device unable to receive voice calls whenever the W-LAN connection is available. The specification describes the background of the invention, and notes that "the public increasingly demands that cellular telephones be available at low cost with ubiquitous coverage." ('244 patent, col. 1, ll. 23-24). It also notes that cellular telephone networks "were originally designed to support voice communications." ('244 patent, col. 1, ll. 47-48). At the time of the invention, the historical primary use of cellular phones was voice communication. A construction of the claim that would render the subscriber unit unable to receive calls is inconsistent with a background where the main purpose of cellular devices was voice communication.

The fact that the third element of the claim refers to communicating packet data supports the interpretation that the plurality of assigned physical channels are used to communicate data. The transceiver communicates data with the W-LAN "in an absence of the plurality of assigned physical channels." ('244 patent, col. 11, ll. 13-14). The plurality of assigned physical channels in the third element refers back to the plurality of assigned physical channels in the first element.

6

If data is communicated with the W-LAN when the plurality of assigned physical channels are not in use, it stands to reason that those channels had been communicating data to the cellular network when they were in use.

I do not agree with Defendants that interpreting the plurality of channels to exclude control channels renders claim 7 superfluous. Plaintiff's interpretation of the plurality includes data channels and voice channels. Claim 7 limiting it to data channels is therefore not superfluous. Defendants' interpretation, on the other hand, would require a device to perform an action that it is literally incapable of performing. Subscriber units cannot release control channels; claims 5 and 21 would require the subscriber unit's processor to do so if Defendants' interpretation were adopted.

I do not, however, entirely agree with Plaintiffs' construction. Plaintiffs propose to replace "via" with "over." (D.I. 473 at 1). They have presented no persuasive justification for doing so. In addition, "transfer data" does not clearly communicate that the transceiver both sends and receives data. As Defendants note, the channels are bidirectional. The specification notes that the "cellular base station 605 transmits and receives data . . . ." ('244 patent, col. 8, ll. 26-27). Since the station is communicating with the subscriber unit, the subscriber unit must also send and receive data. In addition, the specification states that "data signals travel bidirectionally across the CDMA radio channels." ('244 patent, col. 10, ll. 21-22). I will therefore construe "configured to communicate . . . via a plurality of assigned physical channels" as "configured to send and receive data . . . via a plurality of assigned physical channels."

## IV. CONCLUSION

The parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury by Monday, April 27, 2015.

7